IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**LISA SIFFORD**                                                                                   **PLAINTIFF**

**V.**                           **CASE NO. 3:19-CV-00252 BSM-JTK**

**ANDREW SAUL,**
**Commissioner of Social Security Administration[1]**                **DEFENDANT**

**RECOMMENDED DISPOSITION**

**I.   Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to District Judge Brian S. Miller. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II.   Introduction:**

Plaintiff, Lisa Sifford ("Sifford"), applied for disability benefits (Title II) and supplemental security income benefits (Title XVI) on June 28, 2016, alleging disability beginning on January 1, 2001. (Tr at 28-40).[2] After conducting a hearing, the Administrative Law Judge ("ALJ") denied

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Sifford's insured status for Title II claims expired on September 30, 2001, well before the relevant-time period, so the ALJ dismissed the Title II claim and based his decision solely on the Title XVI claim. (Tr. at 28-30).

her application. *Id*. The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Sifford has requested judicial review.

For the reasons stated below, this Court should affirm the decision of the Commissioner.

## III. The Commissioner's Decision:

The ALJ found that Sifford had not engaged in substantial gainful activity since the amended alleged onset date of June 28, 2016. (Tr. at 31). The ALJ found, at Step Two of the sequential five-step analysis, that Sifford had the following severe impairments: anxiety, depression, fibromyalgia, status post cervical fusion, and history of thoracic outlet syndrome. *Id*.

At Step Three, the ALJ determined that Sifford's impairments did not meet or equal a listed impairment. (Tr. at 32). Before proceeding to Step Four, the ALJ determined that Sifford had the residual functional capacity ("RFC") to perform light work with restrictions: 1) she could frequently finger and handle and occasionally overhead reach; 2) she could occasionally balance stoop, kneel, crouch, and crawl; 3) she could perform work involving simple, routine, repetitive work, with supervision that is simple, direct, and concrete; and 4) she could have frequent contact with co-workers and supervisors and occasional contact with the general public. (Tr. at 34)

The ALJ found that Sifford had no past relevant work. (Tr. at 39). Next, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Sifford's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. *Id.* Therefore, the ALJ found that Sifford was not disabled. *Id*.

## IV. Discussion:

A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B. Sifford's Arguments on Appeal

Sifford argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the RFC did not incorporate all of her limitations and that the Appeals Council erred in not giving weight to the opinion of Dr. Leslie McCasland, M.D. (Tr. at 9-12).

Sifford alleged problems from fibromyalgia, cervical pain, thoracic outlet syndrome, anxiety, and depression. Doctors at the Mayo Clinic found no connective tissue disease and her joints looked good. (Tr. at 1089-1097, 1148-1153). She was encouraged to exercise and continue daily activities. (Tr. at 754-758, 1089-1097, 1206-1208). Physical therapy, stretching, heat, and deep breathing helped with fibromyalgia and Sifford said she was much relieved about her condition after attending a two-day class about it. (Tr. at 1284-1287)

After a neck fusion surgery in 2016, Sifford said her pain was reduced and she was pleased with surgery. (Tr. at 1104-1108). Xanax reduced her pain. (Tr. at 86-89). She could do some chores, watch TV, drive, stretch, and walk around Wal-Mart. (Tr. at 90-103).

As for thoracic outlet syndrome, she was treated conservatively and an exam was benign

3

on December 16, 2015 (Tr. at 811-815, 1009-1012). Surgery was not recommended. No doctor placed any restriction om her based on this diagnosis. Her symptoms had improved by May 23, 2017. (Tr. at 1288-1289).

Sifford treated her anxiety and depression with Seroquel and experienced great relief from that medication. In October 2016, she said her energy and motivation had improved. (Tr. at 1236-1243). She was coping better with PTSD and insomnia. (Tr. at 982-985). By January 2017, her mood and energy level were improved. (Tr. at 1240-1243). She had a much better attitude thanks to practicing tai chi, and she enjoyed massage therapy. (Tr. at 1298-1301, 1402). At various office visits, Sifford's judgment and insight were good, with logical thought process and intact concentration and memory. (Tr. at 35, 757, 991, 1092, 1107, 1237).

Sifford argues that the mental and physical RFC did not fully incorporate her limitations. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ bears the primary responsibility for assessing a claimant's RFC and the finding must be based on all relevant evidence in the record. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).

Sifford showed improvement with treatment, she only required conservative treatment, and no doctor placed any restrictions on her. She was encouraged to exercise. She was able to do a variety of daily activities. Clinical exams were generally normal. The RFC properly captured all

4

of Sifford's limitations.

Sifford also argued that the ALJ should have given more weight to the opinions of two providers, nurses Tashina Brown and Rachel Leibhaber. Ms. Liebhaber's statement issued before the relevant time-period and it was short and conclusory; it merely said that Sifford was unable to work at the time. (Tr. at 649). A conclusory opinion has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Further, a provider's opinion on Sifford's ability to work involves an issue reserved for the Commissioner, and therefore is not entitled to controlling weight. *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004). The ALJ properly discounted this opinion.

He also properly discounted Ms. Liebhaber's opinion that Sifford had marked or extreme mental functional limitations. Again, Sifford testified that Seroquel was of great benefit for mental problems and she said mood, energy, and sleep were better over time. She was able to do a variety of daily activities, indicating she was not as limited as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

Finally, Sifford contends that the Appeals Council erred by disregarding the opinion of Dr. McCasland, who opined that, based on physical impairments, Sifford was not able to perform even sedentary work. (Tr. at 9-12). This conflicted with the mild clinical findings and Sifford's general improvement over time. Also, Sifford told Ms. Liebhaber that she had a good outlook on pain, Dr. Liebhaber treated conservatively with Lyrica and Naproxen, and Ms. Liebhaber recommended exercise and physical therapy. (Tr. at 1406-1408). No other treating doctor offered a similar opinion to Ms. Liebhaber's. The Appeals Council has discretion to consider new evidence; Dr. McCasland's opinion conflicted with the medical record and Sifford's own testimony, so the

5

Appeals Council did not err by discounting it.

## V. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ assigned an appropriate RFC and the ALJ and the Appeals Council properly weighed the opinion evidence. The finding that Sifford was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 20th day of March, 2020.

_____
UNITED STATES MAGISTRATE JUDGE